UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

KING ZAK INDUSTRIES, INC.,

                                  Plaintiff,

                                                              **OPINION AND ORDER**

               - against -
                                                              No. 16-CV-9676 (CS)

TOYS 4 U USA CORP.,

                                  Defendant.

------------------------------------------------------------------------x

Appearances:

Neil B. Friedman
Ryan A. McGonigle
Hodgson Russ LLP
New York, New York
*Counsel for Plaintiff*

Christopher W. Niro
Niro Law Group, LLC
Chicago, Illinois
*Counsel for Defendant*

Seibel, J.

        Before the Court is Defendant's Motion for Judgment on the Pleadings with respect to

Plaintiff's copyright infringement claim and Defendant's noninfringement counterclaim pursuant

to Federal Rule of Civil Procedure 12(c). (Doc. 43.) For the following reasons, Defendant's

motion is GRANTED in part and DENIED in part.

I.      **BACKGROUND**

        A.      **Factual Background**

        Plaintiff/Counterclaim Defendant King Zak (referred to as Plaintiff herein) manufactures

and distributes party goods including, among other things, disposable tableware such as plates,

cutlery, dishes, bowls, cups, napkins, and table covers, which are sold online and in retail stores,

1

including supermarkets and party stores.  (Doc. 30 ("AC") ¶ 7.)  Among Plaintiff's products is the *Illuminations* collection, which consists of disposable tableware displaying Chanukah-themed artwork, including menorahs and dreidels.  (*Id.* ¶ 8.)  Plaintiff owns a copyright – Registration No. VA 1-910-463 – entitled *Illuminations*, effective May 23, 2014.  (*Id.* ¶ 10; *see id.* Ex. A.)  Attached to its Amended Complaint as Exhibit A are several images of the *Illuminations* collection, including a paper plate, a square napkin, a plastic tablecover, a paper cup, and a "bistro" napkin, each containing Chanukah-themed artwork.  (*Id.* Ex. A.)  Plaintiff's paper plate is depicted below.



(*Id.* Ex. A at 2.)[1]

In or about 2010, Defendant/Counterclaim Plaintiff Toys 4 U USA Corp. (referred to as Defendant herein) began to purchase Chanukah-themed products from Plaintiff and sell them in its own establishments.  (*Id.* ¶ 14.)  Plaintiff alleges that it discovered Defendant was selling Plaintiff's products below wholesale cost, and that Defendant was using Plaintiff's products "as a loss leader to generate foot traffic in Defendant's toy stores for the holiday shopping season." (*Id.*)  Because of the damage this was causing Plaintiff's regular accounts in Defendant's

---

[1] Because the parties primarily address the paper plate as the alleged infringing product, most of my analysis will pertain to that product.

geographic area, Plaintiff told Defendant that it would no longer sell its products to Defendant. (*Id.*) Sometime after Plaintiff discontinued its relationship with Defendant, Defendant began selling its own Chanukah-themed tableware products, including plates, cups, napkins, and table covers. (*Id.* ¶ 15.) Plaintiff alleges that Defendant's products were copied directly from and are substantially similar to the *Illuminations* Collection, (*id.* ¶ 16), and/or that Defendant knowingly and willfully sourced, imported, and/or otherwise acquired its products because of their substantial similarity to Plaintiff's collection, (*id.* ¶ 21). An image of Defendant's paper plate is reproduced below.



(*Id.* Ex. B at 4.)

On December 12, 2016, Plaintiff's counsel sent a letter to the office of Defendant's president, notifying Defendant of Plaintiff's copyright in the *Illuminations* collection and alerting Defendant that it believed the sale, production, distribution, and promotion of Defendant's Chanukah-themed products constituted copyright infringement. (*Id.* ¶ 25.) Plaintiff asked that Defendant cease promoting, displaying, distributing, offering for sale, and selling the products by 5:00 p.m. on December 14, 2016. (*Id.*) Plaintiff alleges that Defendant increased its promotional

efforts on December 13, 2016, by placing its infringing products on sidewalk displays in front of its retail stores. (*Id.* ¶ 26.)

### B.    <u>Procedural History</u>

Plaintiff brought this suit on December 15, 2016, alleging copyright infringement. Defendant answered on January 30, 2017, and brought two counterclaims against Plaintiff for non-infringement and invalidity of the copyright. (Doc. 18.) Plaintiff answered Defendant's counterclaims on February 21, 2017. (Doc. 20.) On April 19, 2017, Defendant filed a letter requesting a pre-motion conference and laid out its position on April 21, 2017. (Docs. 23, 25.) Plaintiff responded on April 27, 2017, (Doc. 27), and the parties appeared for a pre-motion conference on May 2, 2017. (Minute Entry dated May 2, 2017.) Plaintiff filed its Amended Complaint on June 7, 2017, (Doc. 30), and Defendant filed an answer and counterclaims on June 19, 2017, (Doc. 37). Plaintiff answered Defendant's counterclaims on July 10, 2017. (Doc. 41.)

The instant motion was filed on July 24, 2017, (Doc. 43), along with Plaintiff's opposition, (Doc. 45 ("P's Opp.")), and Defendant's reply, (Doc. 46 ("D's Reply")). Defendant moves for judgment on the pleadings with respect to Plaintiff's claim for copyright infringement and its own claim of noninfringement, arguing that it has not infringed Plaintiff's copyright as a matter of law. (Doc. 44 ("D's Mem.") at 1.) Defendant does not seek a judgment on its second counterclaim for invalidity of Plaintiff's copyright, but Plaintiff argues in its opposition brief that the Court should *sua sponte* dismiss that claim because Defendant implicitly admitted in its brief that the copyright is valid. (P's Opp. at 15.)

## II.    LEGAL STANDARD

### A.    Rule 12(c) Motion

The standard for assessing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *Accelecare Wound Ctrs., Inc. v. Bank of N.Y.*, No. 08-CV-8351, 2009 WL 2460987, at *4 (S.D.N.Y. Aug. 11, 2009).[2]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

---

[2] Defendant agrees with this proposition in its opening brief, stating that "[i]n deciding a Rule 12(c) motion, the court applies 'the same standard as that applicable to a motion under Rule 12(b)(6).'"  (D's Mem. at 1 (quoting *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 290 (S.D.N.Y. 2012)).)  In its reply brief, however, Defendant contests Plaintiff's recitation of the applicable legal standard.  (D's Reply at 1.)  It is unclear why Defendant contests Plaintiff's – and its own – correct recitation of the legal standard for a Rule 12(c) motion.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Documents Properly Considered

On a Rule 12(c) motion, the Court may ordinarily only consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). "A complaint is also deemed to include any . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (internal quotation marks and alteration omitted). A document is "integral" if the complaint "relies heavily on its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). "[I]n copyright infringement cases the works themselves supersede and control contrary descriptions of them." *Effie Film*, 909 F. Supp. 2d at 290 (internal quotation marks omitted).

I will consider the images of Plaintiff and Defendant's Chanukah-themed products because they are attached to Plaintiff's Amended Complaint. (*See* AC Exs. A-B.)

Defendant also attaches several exhibits to its opening and reply briefs, including (1) a webpage entitled "How to Light the Menorah," (D's Mem. Ex. A), (2) a webpage entitled "What is Hanukkah?" (*id.* Ex. B), (3) an excerpt from *A Book of Jewish Concepts* by Philip Birnbaum, (*id.* Ex. C), (4) an excerpt from *The Thread of Blue* by Ben Zion Bokser, (*id.* Ex. D), (5) a screenshot of a Google image search for "colorful menorah," (D's Reply Ex. A), (6) a screenshot of a Google image search for "menorah," (*id.* Ex. B), and (6) a screenshot of a Google image search for "dreidel," (*id.* Ex. C).

None of these documents are attached to, referenced in, or integral to Plaintiff's Amended Complaint. I may nevertheless take judicial notice under Federal Rule of Evidence 201 of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Effie Film*, 909 F. Supp. 2d at 298 (internal quotation marks omitted). "'Notice has been taken of historic facts relating to religious history and practice, politics, international and foreign history, and a variety of other subjects.'" *Id.* at 299 (quoting 1 *Jones on Evidence* § 2:51 (7th ed. 2004)). But "when facts or opinions found in historical materials or secondary sources are disputed, it is error to accept the data (however authentic) as evidence." *Oneida Indian Nation of N.Y. v. State of N.Y.*, 691 F.2d 1070, 1086 (2d Cir. 1982).

Putting aside the screenshots of the Google image searches, Defendant's exhibits describe the background of Chanukah and its traditions, such as lighting the menorah, spinning the dreidel, and other religious practices associated with Judaism. Defendant fails to explain, however, how these exhibits relate to the issue at hand. The significance of menorahs and dreidels to Judaism and the celebration of Chanukah does not help the Court answer the question

of whether Defendant's Chanukah-themed products are substantially similar to, and thus infringe, Plaintiff's copyright. Accordingly, although I take judicial notice of the fact that menorahs and dreidels are associated with Chanukah, I need not determine whether to take judicial notice of Exhibits A through D attached to Defendant's opening brief.

As for Defendant's Reply Exhibits, I assume Defendant has attached these screenshots to show the Court that menorahs and dreidels all contain similar characteristics and that multicolored menorahs are common. Courts in copyright infringement cases may take judicial notice of "the generic elements of creative works." *Effie Film*, 909 F. Supp. 2d at 300 (internal quotation marks omitted). Thus, I will take judicial notice of the fact that as associated with Chanukah, a menorah is a nine-branched candelabrum – with one larger or higher candle in the center, and four on each side. I will similarly take judicial notice of the fact that a dreidel is a four-sided spinning top, each side of which contains a Hebrew letter – Nun, Gimel, He, and Shin. I will not, however, consider the screenshots of the Google image searches attached to Defendant's reply brief because "the results of a Google search are continually changing and thus cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Better Homes Realty, Inc. v. Watmore*, No. 16-CV-1607, 2017 WL 1400065, at *3 (S.D. Cal. Apr. 18, 2017) (internal quotation marks omitted).[3]

## III. DISCUSSION

### A. Copyright Infringement Framework

The Copyright Act invests copyright holders with several exclusive rights with respect to their copyrighted works, including the rights "to reproduce the copyrighted work in copies . . . ,

---

[3] Moreover, Defendant provided only a sliver of the relevant Google image results. A review of the full results of the same search (as of December 3, 2017) utterly undermines Defendant's allegation that menorahs are "fairly standardized." (D's Reply at 3.) Even the results for "dreidel" show many more variations than Defendant depicts.

to prepare derivative works based on the copyrighted work . . . [and] to display the copyrighted work publicly." 17 U.S.C. § 106 (2002). To establish a copyright infringement claim, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). For purposes of this motion only, Defendant does not dispute that it copied Plaintiff's work. (D's Reply at 5.) *See Peter F. Gaito*, 602 F.3d at 61, 63 (for purposes of motion to dismiss, court assumed that actual copying by defendants occurred). "Although substantial similarity analysis often presents questions of fact, where the court has before it all that is necessary to make a comparison of the works in question, it may rule on substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss." *Effie Film*, 909 F. Supp. 2d at 290-91 (internal quotation marks omitted); *see Peter F. Gaito*, 602 F.3d at 63-64. "If, in making that evaluation, the district court determines that the two works are 'not substantially similar as a matter of law,' the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not 'plausibly give rise to an entitlement to relief.'" *Peter F. Gaito*, 602 F.3d at 64 (first quoting *Kregos v. Associated Press*, 3 F.3d 656, 664 (2d Cir. 1993); then quoting *Iqbal*, 556 U.S. at 679).

### B.     Substantial Similarity Tests

The parties dispute what test the Court should apply to analyze substantial similarity. "The determination of the extent of similarity that will constitute a *substantial*, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible [to] helpful generalizations." *Horizon Comics Prods., Inc. v. Marvel Entm't, LLC*, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017) (internal quotation marks omitted).

9

Where the works in question contain entirely protectable elements, the standard test is whether "an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted).

When faced with works that have "both protectable and unprotectable elements, [however,] the analysis is 'more discerning.'" *Horizon Comics*, 246 F. Supp. 3d at 941 (quoting *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 141 (2d Cir. 1992)). In that situation, the Court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis omitted). To apply the more discerning ordinary observer test, "the Court looks to whether the alleged similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." *Horizon Comics*, 246 F. Supp. 3d at 941 (internal quotation marks omitted).

Regardless of which of the above tests apply, however, the Second Circuit has "disavowed any notion that 'we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Peter F. Gaito*, 602 F.3d at 66 (internal quotation marks omitted). "The inquiry is more holistic, as the Court compar[es] the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense." *Horizon Comics*, 246 F. Supp. 3d at 941 (alterations in original) (internal quotation marks omitted).

Defendant advocates for the application of the "abstraction-filtration-comparison" ("AFC") test as articulated by the Second Circuit in *Computer Associates International, Inc. v.*

*Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992), which draws on familiar copyright doctrines such as merger, scène à faire, and public domain, *id.* at 706.

> In ascertaining substantial similarity under this approach, a court would first break down the allegedly infringed program into its constituent structural parts. Then, by examining each of these parts for such things as incorporated ideas, expression that is necessarily incidental to those ideas, and elements that are taken from the public domain, a court would then be able to sift out all non-protectable material. Left with a kernel, or possible kernels, of creative expression after following this process of elimination, the court's last step would be to compare this material with the structure of an allegedly infringing program.

*Id.*

While one of the preeminent copyright experts has opined that the AFC test could be applied to all copyright cases, *see Churchill Livingstone, Inc. v. Williams & Wilkins*, 949 F. Supp. 1045, 1050 (S.D.N.Y. 1996) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.03(F)(1) at 13-120 (1996)), courts within the Second Circuit have noted that "[a]n elaborate abstraction-filtration-comparison for each and every element of an alleged infringement, which may be helpful to deal with a complex computer program when the claim is nonliteral similarity, may not be necessary in a straightforward textual copyright case," *id.*, and have applied the test primarily to infringement actions involving computer programs, *see, e.g.*, *eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04-CV-4051, 2005 WL 2977569, at *23-28 (S.D.N.Y. Nov. 3, 2005); *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276, 284-86 (S.D.N.Y. 2001); *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 415-16 (S.D.N.Y. 1999). Indeed, few federal courts have applied the AFC test outside the context of computer program copyrights. *Compare Churchill Livingstone*, 949 F. Supp. at 1050 ("In a case such as this, simply examining the relevant parts of a copyrighted work will allow a court to apply settled copyright principles and thereby filter out unprotected elements."), *with Country Kids 'N City Slicks v. Sheen*, 77 F.3d 1280, 1285-88 (10th Cir. 1996) (applying AFC test to infringement claim regarding wooden

versions of paper dolls but remanding case to determine whether works were substantially similar using ordinary observer test).

The Court agrees with Plaintiff that it is unnecessary to apply the AFC test to the disputed products here. That test – a version of which was originally created by Learned Hand and applied in the context of plays and novels, *Altai*, 982 F.3d at 706-07 – was reformulated in *Altai* specifically to address the complex nature of computer programs, which "are likely to be somewhat impenetrable by lay observers – whether they be judges or juries – and, thus, seem to fall outside the category of works contemplated by those who engineered the [ordinary observer] test," *id.* at 713. In *Altai*, the Court abstracted the computer program into various subgroups to more easily filter out unprotectable elements, a "process [that] beg[an] with the code and end[ed] with an articulation of the program's ultimate function," and "[a]long the way, it [was] necessary essentially to retrace and map each of the designer's steps – in the opposite order in which they were taken during the program's creation." *Id.* at 707. Defendant has pointed to no case within the Second Circuit – with the exception of *Churchill Livingstone*, discussed below – that has applied the AFC test to two-dimensional works such as those at issue here, and the Court sees no reason to apply such a complex process usually reserved for computer programs with intricate features to two-dimensional images on paper products.

Beyond the AFC test being unnecessarily complicated in this context, Defendant's remaining arguments as to why I should apply the AFC test are similarly unavailing. First, Defendant argues in its reply brief that the AFC test should be used because the Second Circuit created it and it is nothing new, in that it draws on familiar copyright doctrines. (D's Reply at 5-7.) While this is true, Defendant fails to provide an answer for the more important question – why the Court should apply the test outside the context of computer programs. Additionally,

Defendant favorably cites *Churchill Livingstone*, and although that case contemplates that the AFC test *could* be applicable outside the computer program context and cites Nimmer's endorsement of its use in all copyright cases, the court ultimately applied a simplified version of the test and suggested that such an "elaborate" test is not needed in a straightforward copyright case. 949 F. Supp. at 1050.

Finally, Defendant argues that "Plaintiff itself cannot keep track of what test it wants the Court to use," in that Plaintiff first advocates for the "more discerning ordinary observer standard," then asks the court to look at the works holistically, then suggests a "total look and feel" test. (D's Reply at 6 (internal quotation marks omitted).) But as cases such as *Effie Film* make clear, these tests are used in conjunction with one another: in a case such as this, where the works contains both protectable and unprotectable elements, the "inquiry is more holistic" and the Court is to compare the works' "total concept and overall feel . . . as instructed by our good eyes and common sense." *Horizon Comics*, 246 F. Supp. 3d at 941; *Effie Film*, 909 F. Supp. 2d at 292. Indeed, courts "have disavowed any notion that we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Id.* (alteration in original) (internal quotation marks omitted). Thus, because Plaintiff's copyright is easily analyzed by a layperson, I need not apply the complex AFC test.[4]

---

[4] Even if I were to apply the AFC test, I am not convinced that Defendant's application to the products at issue is logical. Defendant suggests that in the first phase, the most general level of abstraction would be the plate, napkin, cup, and tablecloth, with traditional images associated with Chanukah, and that the second, concrete level of abstraction would be the "typical Chanukah theme in their design." (D's Mem. at 6.) But Plaintiff is not claiming that it has an exclusive copyright in the type of product itself or in all Chanukah-themed products, just in the particular design that appears on its products. So the first stage of the AFC test as Defendant applied it to this case is unhelpful. And regardless of which test I apply, I must "extract the unprotectible elements from [my] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves*, 71 F.3d at 1002 (emphasis omitted). Thus, the test that I will ultimately apply will not drastically differ from Defendant's proposal in any event.

## C.  Protectable and Unprotectable Elements

Defendant argues that because of doctrines such as merger, scène à faire, and public domain, Plaintiff's copyright contains many unprotectable elements – including the menorah, the dreidels, and the color blue – and that the remaining protectable features are not substantially similar to Defendant's products.  (D's Mem. at 6-16.)  Copyrights protect the particular means of expressing an idea, not the idea itself.  *Yurman Design*, 262 F.3d at 111; *see* 17 U.S.C. § 102(b).  An expression has merged with an idea (and is thus unprotected) "in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection of the idea itself."  *N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 116-17 (2d Cir. 2007) (internal quotation marks omitted).  "*[S]cenes a faire*, sequences of events that necessarily result from the choice of a setting or situation, do not enjoy copyright protection."  *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (internal quotation marks omitted); *see Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980) ("[S]cènes à faire [are] incidents, characters or settings [that are] . . . indispensable, or at least standard, in the treatment of a given topic.") (internal quotation marks omitted).  Relatedly, expressive elements taken from the public domain, such as flora and fauna or the alphabet, are not protected.  *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 269 (2d Cir. 2001); *Dean v. Cameron*, 53 F. Supp. 3d 641, 646 (S.D.N.Y. 2014).

While a menorah or dreidel may be one of only a few ways to illustrate Chanukah, and while those items may be standard in depictions relating to the holiday, and while elements such as colors and Hebrew letters are not protected, Defendant's plate is plausibly substantially similar to Plaintiff's when these unprotectable elements are disregarded.  As explained below, the Court cannot on this motion conclude as a matter of law that the similarity between the

parties' paper plates and cups "concerns only non-copyrightable elements of [Plaintiff's] work, or [that] no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito*, 602 F.3d at 63 (internal quotation marks omitted).

Plaintiff does not explicitly dispute that its products contain unprotectable elements, nor does it suggest that the works are similar because of the mere existence of protectable elements. Indeed, the Court could not conclude that the presence of a menorah and dreidel in both paper plates could support a finding of substantial similarity. *See Horizon Comics*, 246 F. Supp. 3d at 943. But "[t]hese stereotypical features . . . notwithstanding, the Court finds that, from an artistic standpoint, there is, indeed, a virtually infinite variety of ways to express the idea of" Chanukah, and specifically, a menorah and a dreidel. *Kurt S. Adler, Inc. v. World Bazaars, Inc.*, 897 F. Supp. 92, 95 (S.D.N.Y. 1995) (discussing copyright of Santa Claus ornament); *see Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1043 (8th Cir. 2003) ("[T]here are numerous ways of depicting Christmas wreaths involving variations of design, shape, color, dimensionality, and lettering, as well as decorative minutiae. The devil is in the details."). Thus, that Plaintiff used stereotypical features in its design does not render the entire work unprotectable, nor does it mean that the protectable elements, when analyzed standing alone and under the more discerning observer standard, are not substantially similar.

### D.     Substantial Similarity

####     1.     Paper Plate

   

**Plaintiff's Design**                    **Defendant's Design**

There are numerous similarities between the two paper plates, although they are not identical.[5]  First, the two menorahs contain branches in a semi-circular shape, each connected to the center with knobs of a different color than the corresponding branch.  Second, both menorahs have a dreidel placed on either side; Plaintiff's design depicts a larger dreidel on the left slightly in front of the menorah and a smaller dreidel on the right slightly behind or next to the menorah, and Defendant's image shows both dreidels in front of the menorah with the larger dreidel on the right appearing further in the foreground than the smaller dreidel to the left.  Both plates show the dreidels tilted at similar angles.  Only two sides of each dreidel appear in both images. Finally, both plates have a thick circular border on the outer rim of the plate and a thin colorful circle between the outer border and the inner design.  Beginning at the 10 o'clock position and ending at the 4 o'clock position (going clockwise), Plaintiff's border is blue with slightly lighter

---

[5] Defendant repeatedly points out that that Plaintiff's copyright "does not claim color, but merely artwork," (D's Mem. at 19; *see* D's Reply at 1-3), and that Plaintiff's copyright "must be limited to the exact colors and exact combination of colors it has chosen, not simply the fact that it is 'multicolored,'" (D's Reply at 2).  I do not interpret Plaintiff's argument to be that it has a copyright on all multicolored menorahs, regardless of the sequences and combination of the colors, as Defendant suggests.  Plaintiff does suggest, however, that Defendant's sequence and combination of colors in the menorah, along with its shape, design, and placement among the dreidels and the design on the border, are substantially similar to Plaintiff's.

blue circles within it. Defendant's border is similarly blue beginning and ending at the same points as Plaintiff's on the plate.[6] Beginning at the 4 o'clock position and ending at the 10 o'clock position (going clockwise), Plaintiff's border contains yellow, blue, orange, red, green and brown squares amidst a blue background, some of which contain a menorah or dreidel shape, and others of which are empty. Defendant's border similarly contains a design beginning at the 4 o'clock position and ending at the 10 o'clock, with yellow, blue, orange, red, green and gray circles amidst a blue background, at least one of which contains a solid dreidel, and most of which are empty. Plaintiff's empty squares have an inner border, the color of which is a darker version of the color in the square, and Defendant's empty circles have an inner border, the color of which is a darker version of the color in the circle.

There are some minor differences between the plates' protectable elements. Plaintiff's menorah has one additional brown knob on the center pillar near the base that does not correspond to any of the branches. Defendant notes that its menorah's "arms are more elongated, forming a u-shape," while Plaintiff's menorah's "arms are wider, forming a half-circle," (D's Mem. at 19), a difference that is barely noticeable. Large flames emanate directly from the menorah's arms on Plaintiff's plate, while the arms on Defendant's plate each contain a candle out of which smaller flames burn. Plaintiff's dreidels each contain the same two letters – He and Gimel – but Defendant's dreidels depict different letters – the left shows Gimel and Nun,

---

[6] Plaintiff argues that Defendant's blue border contains shadows, similar to Plaintiff's, (P's Opp. at 14), but that is not clear. Any shading may be the result of the plastic covering in Plaintiff's image of the plate, (*id.*), or a reflection of the light in Defendant's image of the plate, (D's Mem. at 22). Moreover, I should note that the color of the blue border on Defendant's plate as it appears in the Amended Complaint and Plaintiff's brief is lighter than the image that appears in Defendant's brief, making the border of Defendant's plate in its brief look darker than Plaintiff's. At this stage, I attribute this difference to copying and printing issues and not any altering of the images by either party. I will analyze the plate images at they appear in Plaintiff's Amended Complaint for consistency's sake, but if the actual plates' colors differ, that may be considered at a later stage of the case. With respect to the remaining products, however, the images provided in this Opinion and Order for Defendant's products are taken from Defendant's brief because the images attached to the Amended Complaint contain a dark background, making it more difficult to see the images clearly.

and the right shows Shin and He. Defendant's dreidels' handles are simple, while Plaintiff's are somewhat more stylized. Moreover, the coloring of the menorahs and dreidels differs, although both designs use similar hues; for example, Plaintiff's center pillar is orange, while Defendant's is a mustard yellow, and while the bases of both are round, Plaintiff's is solid blue with a lime green cap on top while Defendant's is the mustard yellow with thin dark and light blue rings around the edge. The branches of Defendant's menorah are orange, dark blue, green and purple, whereas the branches of Plaintiff's menorah are green, orange, light blue and royal blue. Finally, as noted above, Plaintiff's border contains squares, while Defendant's contains circles.

"These specific similarities and differences are significant, but do not end the inquiry." *Horizon Comics*, 246 F. Supp. 3d at 944. Defendant urges the Court to break the two designs into their numerous components and compare each element individually. (D's Mem. at 18-22.) But "[t]he Court must look beyond the works as dissected 'into their separate components,' and must 'compar[e] the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by our good eyes and common sense.'" *Horizon Comics*, 246 F. Supp. 3d at 944 (alteration in original) (quoting *Effie Film*, 909 F. Supp. 2d at 292); *see Peter F. Gaito*, 602 F.3d at 66 ("[W]e have disavowed any notion that we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.") (alterations in original) (internal quotation marks omitted).

> We also must recognize that *dissimilarity* between some aspects of the works will not automatically relieve the infringer of liability, for no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated. It is only when the similarities between the protected elements of plaintiff's work and the allegedly infringing work are of small import quantitatively or qualitatively that the defendant will be found innocent of infringement.

*Williams*, 84 F.3d at 588 (emphasis in original) (citation and internal quotation marks omitted).

Applying the more discerning observer standard and looking at the total concept and overall feel

of the two works, I cannot conclude that "no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito*, 602 F.3d at 63 (internal quotation marks omitted). Even though Plaintiff's and Defendant's works both contain menorahs and dreidels, which are indisputably unprotectable on their own and inevitably share features common to all menorahs and dreidels, both works "contain virtually identical expressions of those features," *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994): the placement and design of the menorahs and dreidels is nearly identical, as is the border, except for a change to the shapes contained therein, *see Kurt S. Adler*, 897 F. Supp. at 95-96 (granting preliminary injunction on grounds that "an ordinary lay observer would overlook the dissimilarities between the artistic (*protectible*) aspects of the two [Santa Claus ornaments] and would conclude that one was copied from the other") (internal quotation marks omitted); *Fisher-Price*, 25 F.3d at 123-24 (stuffed animals that had protectable and unprotectable elements were substantially similar). In other words, the plates "do not merely share features that are common to all" Chanukah-themed products, but rather "contain virtually identical expressions of those features." *Fisher-Price*, 25 F.3d at 124.

Even though the parties primarily addressed the substantial similarity of the paper plates, I will briefly address Defendant's argument that the other products are not substantially similar to Plaintiff's *Illumination* collection as a matter of law.

2. <u>Paper Cups</u>



**Plaintiff's Design**     **Defendant's Design**

The images in the center of the parties' paper cups are identical to the images in the

center of each party's respective paper plate, as discussed above.  The background of each cup,

however, is different.  A small top portion of Plaintiff's cup is dark blue with light blue circles

within it, similar to the right side of Plaintiff's plate's border, and the remaining portion contains

the pattern that appears on the left side of Plaintiff's plate's border.  Defendant's background is

dark blue with lighter blue menorahs.  Even though the background on each cup differs,

Defendant's cup's inner design contains a striking similarity to Plaintiff's, as it does in the paper

plates.  Thus, I cannot say that as a matter of law these two products are not substantially similar.

3. <u>Napkins and Tablecloths</u>



**Plaintiff's Design**     **Defendant's Design**

 

**Plaintiff's Design**          **Defendant's Design**

The characteristics of the plate and cup that render them plausibly substantially similar are largely absent from the napkins and tablecloths. Plaintiff's napkin is diagonally split, the upper half of which contains one menorah and one dreidel with a white background, and the bottom half of which contains Plaintiff's multicolored square design with menorahs and dreidels within the squares. Defendant's napkin, on the other hand, is divided vertically, with the right third containing the dark blue background with multiple floating light blue menorahs and dreidels within, and the left two-thirds containing Defendants' multicolored circle design with menorahs and dreidels within the circles. Similarly, the top of Plaintiff's tablecover is dark blue with light blue circles, and the bottom has the same square design as Plaintiff's napkin, while Defendant's napkin has a blue background and large multicolored circles with faint menorahs and possibly dreidels within. When looking at the total concept and overall feel of these products, no reasonable jury properly instructed, could conclude that Defendant's napkin and tablecover are substantially similar to Plaintiff's. Thus, Plaintiff's claim for copyright infringement with respect to the napkin and tablecover only is dismissed.

-----

My ruling does not, as Defendant suggests, "grant [Plaintiff] a monopoly in Chanukah themed 2-D artwork." (D's Mem. at 9.) If Defendant had created a paper plate or cup depicting, for example, five menorahs and five dreidels, or only dreidels, or only menorahs, or even one menorah and two dreidels differently angled and placed, I might be able to determine as a matter of law that it did not infringe on Plaintiff's copyright. But here, Defendant's Chanukah-themed paper plate, for example, features one menorah, an angled dreidel on each side, and a thin border surrounded by a thick border, half of which is blue and half of which has a design, and Plaintiff's plate features one menorah, an angled dreidel on each side, and a thin border surrounded by a thick border, half of which is blue and half of which has a design. That Defendant changed the order of the colors on the menorah and dreidels, added candles in the candlesticks, and changed the square shapes in the border to circles does not render it not substantially similar to Plaintiff's design as a matter of law.[7]

---

[7] Plaintiff asks me to dismiss Defendant's counterclaim for invalidity *sua sponte* because Defendant made a "tacit admission . . . that [Plaintiff's] Copyright is valid" by stating in its moving brief that "'[Plaintiff's] paper goods contain minor protectable elements and largely unprotectable elements.'" (P's Opp. at 15 (quoting D's Mem. at 18).) Defendant only moved for judgment on the pleadings on the issue of infringement, not invalidity, and thus assumed validity and actual copying for purposes of this motion, (D's Mem. at 3; D's Reply at 4-5), and Defendant may assert alternative and inconsistent theories, *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 451 (E.D.N.Y. 2012) ("[L]itigants have substantial leeway under Rule 8(e) to plead alternative, and even inconsistent, claims.") (internal quotation marks omitted). Accordingly, I decline to dismiss the counterclaim *sua sponte*.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is

GRANTED with respect to the napkin and tablecover and DENIED with respect to the paper

plate and cup.  The Clerk of Court is respectfully directed to terminate the pending motion.

(Doc. 43.)

**SO ORDERED.**

Dated: December 8, 2017
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.